642 So.2d 1381 (1994)
Louis A. BELL, Appellant,
v.
W.T. COX, Jr., Appellee.
No. 92-1867.
District Court of Appeal of Florida, Fifth District.
April 29, 1994.
Rehearing Denied October 13, 1994.
Bruce W. Jacobus, Melbourne, for appellant.
Harold T. Bistline of Stromire, Bistline & Miniclier, Cocoa, for appellee.
THOMPSON, Judge.
Appellant, Louis A. Bell, appeals a final judgment of the trial court granting the appellee, W.T. Cox, Jr., a statutory way of necessity easement pursuant to sections 704.01(2) and 704.04, Florida Statutes (1991), over a portion of property owned by Bell. We affirm the judgment.

FACTS
This case involves the right to a way of necessity as that common-law concept is recognized in section 704.01(1), Florida Statutes (1991). The property involved consists of four parcels, one owned by Cox, two owned by Bell and one owned by Donald and Beth Messersmith.[1]
*1382 Cox purchased a parcel of land in 1971. The parcel is located in Brevard County and is bordered by the Banana River on the east and the Indian River on the west. The parcel encompassed the subject parcel in this lawsuit. Bell owns two parcels north of the subject parcel and the Messersmiths own a third parcel north of the Bell property. In 1986, Cox attempted to purchase an easement from Bell over Bell's property. Bell refused to sell a portion of his property to Cox, but offered to allow the easement in return for one acre of Cox's land on the waterfront. This was 1/3 of Cox's parcel. Cox refused.
Cox filed a complaint seeking a statutory way of necessity, exclusive of common-law right, pursuant to section 704.01(2), Florida Statutes (1991). Cox alleged the property had no practical ingress and egress except through Bell's and the Messersmiths' properties, to Randon Lane, a public road. Bell filed an answer and asserted a counterclaim seeking a declaratory judgment that sections 704.01 and 704.04, Florida Statutes (1991), are unconstitutional.
After a non-jury trial, the court entered a final judgment granting Cox a statutory way of necessity, finding Cox's property hemmed-in or shut-off by Bell's and the Messersmiths' properties and that the Cox property had no practicable route of ingress or egress to a public road except through Bell's and the Messersmiths' properties. The court granted a statutory way of necessity and entered a summary final judgment against Bell's counterclaim. The court ordered Cox to pay Bell $56,100 as compensation for the use of the easement over his property. This amount was determined by an appraiser hired by Cox. The court also awarded attorney's fees of $10,000 and costs of $6,557.55 to Cox against Bell under section 704.04, Florida Statutes (1991), because Bell unreasonably refused to comply with the statute. Bell timely appeals.

ARGUMENTS
Bell raises six issues on appeal. Four of the issues deal with evidence admitted by the trial judge and the sufficiency of rulings made by the trial court. Bell argues, in essence, that this court should reweigh the evidence presented at the trial. We find that the record supports the findings of fact and the exercise of discretion by the trial judge. The factual determinations of the trial court are clothed with the presumption of correctness. Wales v. Wales, 422 So.2d 1066 (Fla. 1st DCA 1982). There was competent substantial evidence to support the trial court's findings and the weight of such evidence is solely in the province of the trial court. See Clegg v. Chipola Aviation, Inc., 458 So.2d 1186 (Fla. 1st DCA 1984).
There are two remaining issues that require attention. First, Bell argues that sections 704.01 and 704.04, Florida Statutes (1991), are unconstitutional and second, that the evidence does not support the determination that there was no common-law right of way to the property, which determination is essential before a statutory way of necessity can be used.
Section 704.01(2) reads:
(2) STATUTORY WAY OF NECESSITY EXCLUSIVE OF COMMON-LAW RIGHT.  Based on public policy, convenience, and necessity, a statutory way of necessity exclusive of any common-law right exists when any land or portion thereof outside any municipality which is being used or desired to be used for a dwelling or dwellings ... shall be shut off or hemmed in by lands, fencing, or other improvements of other persons so that no practicable route of egress or ingress shall be available therefrom to the nearest practicable public or private road. The owner or tenant thereof, or anyone in their behalf, lawfully may use and maintain an easement ... over, under, through, and upon the lands which lie between the said shut-off or hemmed-in lands and such public or private road by means of the nearest practical route, considering the use to which said lands are being put; and the use thereof, as aforesaid, shall not constitute a trespass; nor shall the party thus using the same be liable in damages for the use thereof; provided that such easement shall be used only in an orderly and *1383 proper manner.
Section 704.04, Florida Statutes (1991), reads:
When the owner or owners of such lands across which a statutory way of necessity under s. 704.01(2) is claimed, exclusive of the common-law right, objects or refuses to permit the use of such way under the conditions set forth herein or until he receives compensation therefor, either party or the board of county commissioners of such county may file suit in the circuit court of the county wherein the land is located in order to determine if the claim for said easement exists, and the amount of compensation to which said party is entitled for use of such easement. Where said easement is awarded to the owner of the dominant tenement, it shall be in compliance with s. 704.01(2) and shall exist so long as such easement is reasonably necessary for the purposes stated herein. The court, in its discretion, shall determine all questions, including the type, duration, extent and location of the easement, the amount of compensation, and the attorney's fees and costs to be awarded to either party for unreasonable refusal to comply with the provisions of s. 704.01(2) provided that if either of said parties so requests in [the] original pleadings, the amount of compensation may be determined by a jury trial. The easement shall date from the time the award is paid.
Bell argues that the statutes violate the equal protection guarantees of Article I, Section 2 of the Florida Constitution because the language "outside any municipality" creates an arbitrary class: the class outside a municipality being treated differently than the class inside a municipality.
The statutes create a cause of action for the establishment of an easement, but do not abridge a fundamental right nor does their application to property "outside any municipality" affect adversely upon some suspect class, therefore, the statute should be analyzed under a rational basis standard and not given strict scrutiny. Under a rational basis standard of review, a court should inquire only whether it is conceivable that the regulatory classification bears some rational relationship to a legitimate state purpose. The Florida High School Activities Ass'n, Inc. v. Thomas ex rel. Thomas, 434 So.2d 306 (Fla. 1983). Bell has the burden to show that there is no conceivable factual predicate which would rationally support the classification he seeks to attack, i.e., "outside a municipality." Id. at 308. Bell has not overcome the burden of showing that the statutes violate the equal protection clause of the Florida Constitution. Bell offers no case or statute to support his position. He merely asserts that the application of the statute to property "outside any municipality" is unreasonable and arbitrary. Bell has failed to show that there is no conceivable factual predicate supporting the classification. His argument, therefore, is without merit.
Bell next argues that the statute is unconstitutional because it is vague. He argues that the term "unreasonable refusal" in section 704.04, Florida Statutes is constitutionally infirm because it authorizes the trial court to award attorney's fees and costs when either party "unreasonably refuses" to comply with section 704.01(2). This argument is also without merit. The statute clearly recognizes the existence of an easement when the dominant estate is shut-off or hemmed-in by the servient estate. The term "unreasonable refusal" is susceptible to be understood by a person of common intelligence when the term is defined in its plain and ordinary sense and applied to this situation. The statute is clear so that persons of common intelligence can understand its meaning. See State v. Hagan, 387 So.2d 943 (Fla. 1980). Also, the statute is clear so that it does not invite arbitrary and discriminatory enforcement. See McKenney v. State, 388 So.2d 1232 (Fla. 1980); State v. Deese, 495 So.2d 286 (Fla. 2nd DCA 1986).
Finally, Bell argues that sections 704.01 and 704.04 are contrary to the public purpose clause of the Florida Constitution. Bell argues that the public policy goal of protecting ecologically sensitive land as shown in section 187.201, Florida Statutes (1991), requires that the statute be stricken as unconstitutional. In essence, he argues that when balancing the goal of protecting *1384 the environment versus the goal of ingress and egress from hemmed-in land, the ecological goal must prevail. Bell overlooks the fact that in Deseret Ranches of Fla., Inc. v. Bowman, 349 So.2d 155 (Fla. 1977), the Florida Supreme Court held that the statutory way of necessity created by these statutes is constitutional. The court wrote that "sensible utilization of land continues to be one of our most important goals." Id. at 156. The court in Deseret found that the statute was consistent with the state public policy of utilization of land and the policy against loss of the use of landlocked property. Further, the public policy providing access to hemmed-in lands was recognized and applied to state agencies. See South Florida Water Management Dist. v. Layton, 402 So.2d 597 (Fla. 2nd DCA 1981). Bell has presented no statute or case showing that environmental public policy goals have superseded long held public policy goals of full utilization of property. We hold, therefore, this statute is constitutional is spite of the arguments offered by Bell.
Bell's next argument is that, before Cox could obtain a statutory right of way, he had to demonstrate that a common-law right of way did not exist. See Parham v. Reddick, 537 So.2d 132 (Fla. 1st DCA 1988). Cox needed to present evidence to establish that his parcel was hemmed-in and that there was no practical route of ingress or egress. Faison v. Smith, 510 So.2d 928 (Fla. 5th DCA 1987). Cox presented evidence and the record supports a finding that no common-law easement existed. There was no unity of title between the dominant and servient estate. The landlocked parcel was originally part of a larger parcel separated by Moon Lake. The record shows that Cox produced ample evidence establishing that the only practical route of ingress and egress was through Bell's property. The trial court made no error.
AFFIRMED.
PETERSON, J., concurs specially, with opinion.
HARRIS, C.J., dissents, with opinion.
PETERSON, Judge, specially concurring.
I agree with Judge Thompson that sections 704.01(2) and 704.04 are constitutional insofar as they provide a remedy to the owner of inaccessible lands to gain a way of necessity by compensation to the owner of the servient lands. In doing so, I have some concern about whether the legislature should extend this important remedy to owners of lands that happen to be located in a municipality. It might be appropriate to do so before the inevitable case arises where a municipality extends its boundaries through the process prescribed by section 171.0413, Florida Statutes (1993) and an owner who has a parcel without access cannot step foot on it.
I would urge trial courts to use sparingly the provision of section 704.04 that allows assessment of attorney's fees and costs against the owner of servient lands. Assessment of fees against the servient owner was appropriate in this case, as the trial court implicitly found that the appellant was completely unreasonable in responding to appellee's request for an easement pursuant to section 704.01(2). But I would further urge the legislature to amend the statute to provide in all cases for the assessment of reasonable attorney's fees and costs against the dominant owner in favor of the servient owner. Such a rule would preclude an award of unreasonable fees and costs to a servient owner who stonewalls the attempts of a neighbor to gain access, and, in my mind would be sufficient to deter unreasonable resistance to a legally coerced easement. The request that an adjacent landowner grant a statutory way of necessity cannot be met by a simple affirmative answer. There are many details to be considered before granting an easement voluntarily. For example, where is it to be located? What is a reasonable width? What should its duration be (usually perpetual)? What compensation should be paid? Who is to pay the costs of appraisers, surveyors and attorneys?[1] The *1385 latter two professionals are always required and it would be foolish for the servient owner to proceed without unquestionably loyal professional assistance. The fees and costs incurred by the servient landowner to gain that loyalty should be paid by the landowner with the access problem. After all, problems with the access were in most cases recognizable when the landlocked parcel was acquired by the owner now asking for statutory relief.
I would urge the legislature to amend the statute by extending it to lands within a municipality and allow the award of reasonable attorney's fees and costs to the owner of the servient lands in all cases.
HARRIS, Chief Justice, dissenting.
I respectfully dissent.
I recognize that our supreme court in Deseret Ranches of Florida, Inc. v. Bowman, 349 So.2d 155 (Fla. 1977), against a challenge that the statute permitted the taking of private property for a nonpublic purpose in contravention of Article X, Section 6(a), Florida Constitution (1968),[1] upheld section 704.04 as being constitutional. That is not the issue before us.
Our present case apparently presents the first challenge to the constitutionality of section 704.04 on the basis of a denial of equal protection. The facts of this case are simple. Mr. Cox has a piece of riverfront property that is cut off from access to the nearest public road by two residential lots owned by Mr. Bell. Bell has the misfortune that his residential lots are situated in the county; if the lots were in a municipality (say anywhere in Duval County), Bell would be safe from having his neighbor condemn a roadway access across his front yard. See Blue Water Corp. v. Hechavarria, 516 So.2d 17 (Fla. 3d DCA 1987).
In this era when residential subdivisions have been and continue to be developed outside municipal limits surrounded by acreage that might indeed lack public access  even the right to a common law way of necessity  the risk remains that someone will demand a roadway across his neighbor's yard. The legislature has permitted this condemnation by individuals only against those persons owning property "outside any municipality." Bell urges that (at least under the facts of this case) this is an unreasonable and arbitrary classification. He urges that the same public purpose (if indeed the Florida Constitution permits it at all) that would justify the taking by one residential lot owner of an easement across his or her neighbor's lot in the county would equally justify it in the municipality. I agree.
In Deseret, the supreme court determined that the public purpose of the statute which saved it from being declared unconstitutional under the original challenge was that it was "grounded in the public policy against the loss of the use of landlocked property." There is simply no rational basis for not applying this policy equally against those *1386 persons who own residential lots on either side of an arbitrary, often changing, municipal boundary.[2]
To add insult to injury, section 704.04 permits, and the trial court awarded, attorney's fees and costs against Bell for his "unreasonable refusal to comply with the provisions of section 704.01(2)." Because Bell failed to voluntarily recognize Cox's statutory way of necessity, he was assessed attorney's fees and court costs upon being ordered to provide the easement. This is wrong for two reasons. First, section 704.01(2), which establishes this statutory way of necessity contemplates that no compensation need be paid by the one acquiring this access across his neighbor's property. Payment is only required if the neighbor objects and insists on a judicial remedy under section 704.04. Therefore, if the neighboring property owner wants compensation, an objection must be made and if such objection is made, such owner will be assessed the adversary's attorney's fees and costs which, in turn, reduces the compensation for the taking so that, as a matter of law, the owner is denied the "full compensation" for the property taken as required by the constitution. In fact, it is the owner of the property "taken" in this manner that should receive attorney's fees and costs so that full compensation is assured. Schick v. Dept. of Agriculture, 586 So.2d 452 (Fla. 1st DCA 1991), rev. dismissed, 595 So.2d 556 (Fla. 1992); Hodges v. Division of Admin., State Dept. of Transp., 323 So.2d 275 (Fla. 2d DCA 1975).
Further, the Florida Constitution provides in its declaration of basic rights:
All natural persons are equal before the law and have inalienable rights, among which are ... to acquire, possess and protect property.[3]
To penalize property owners, therefore, by making them pay attorney's fees and costs merely because they elect to defend their interest in property by contesting the establishment of a statutory way of necessity across their property punishes them for exercising their basic constitutional rights.
Section 704.04 permits nothing less than an action in eminent domain brought by a private individual. The law of eminent domain should apply. One cannot imagine the State Department of Transportation recovering costs and attorney's fees in an action condemning a road right-of-way merely because it is determined that it has the right to condemn. The mere determination that one has a statutory way of necessity should not permit the assessment of the expense of the *1387 action against the unfortunate property owner who must supply that right-of-way.
I would, therefore, also hold that the provision which permits the assessment of attorney's fees and costs against the owner of the property taken is likewise unconstitutional.
NOTES
[1] The Messersmiths were defendants below but did not join in this appeal. Cox was ordered to pay the Messersmiths $31,000 for use of the easement, their attorney's fees and their costs because Cox never tendered an offer before trial for their easement. See § 704.04, Fla. Stat. (1991).
[1] All this must be accomplished between an owner that understandably does not wish the valuable attributes associated with the private ownership of land interrupted by an adjacent owner who wishes to gain access with as little economic impact as possible.
[1] I agree with the court in Franklin v. Boatright, 399 So.2d 1132 (Fla. 1st DCA), rev. denied, 411 So.2d 382 (Fla. 1981), that the dissent by Justice Sundberg in Deseret was indeed a well-reasoned analysis of the constitutionality of section 704.01(2) which is the underpinning of section 704.04. I respectfully suggest that the supreme court revisit this issue as it applies to the taking of an access easement by one owner of a residential lot across his or her neighbor's yard.

I suggest that the answer reached in Stein v. Darby, 126 So.2d 313 (Fla. 1st DCA) cert. denied, 134 So.2d 232 (Fla. 1961), (and relied upon by Deseret) does not justify one owner of a residential lot to condemn access across another residential lot. In Stein, the court permitted a landlocked owner to "take" an easement across a railroad right-of-way. In Deseret, the court permitted a taking across ranch land. In neither case was there any indication that the "taking" would substantially impact on the servient estate owner's enjoyment of his or her remaining property. Our constitution prohibits the taking of private property except for a "public purpose." Even assuming that the taking of an easement across a railroad right-of-way and the taking of an easement across ranch land in order to open up landlocked land for development in order to provide homes for an ever increasing population may benefit the public more than an individual owner, it is indeed a giant leap in logic to hold that giving an individual owner of a residential lot a right to condemn an access roadway over his neighbor's yard serves primarily a public purpose with only an incidental benefit to the property owner. I submit that under the facts of this case, the taking is unconstitutional  within or without a municipality. The approval of such a taking totally defeats any protection granted under our constitution by its "public purpose" requirement.
[2] I disagree with the majority's conclusion that the statute does "not abridge a fundamental right" and that we are therefore limited to a "rational basis standard of review." Under this standard, we would be precluded from even considering this constitutional challenge if it is conceivable that the regulatory classification bears some rational relationship to a legitimate state purpose. However, this standard normally applies only in economic or social welfare matters. Even if we were limited to the rational basis standard of review, I would find that there is no conceivable rational relationship between some legitimate state purpose and the application of this statutory way of necessity against only nonmunicipal owners of property. But here we are talking fundamental rights. As Justice Sundberg stated in his Deseret dissent:

At a time in history when attention has been focused, quite properly, on the protection of civil rights, we must not lose sight of the fact that the fundamental document expressing the organic law of this state and the nation accords no less dignity to the protection of property rights. Enunciated as one of the "basic" and "inalienable" rights by our present Constitution is the right "to acquire, possess and protect property." Article I, Section 2, Florida Constitution. It is an odious concept indeed that the awesome eminent domain power of the sovereign may be utilized by an individual to take for his own private use the private land of his neighbor against the will of the neighbor regardless of the requirement that full compensation shall be paid. It is no consolation to assert that the right-of-way easement is temporary and shall exist only so long as it is reasonably necessary for the purposes stated in the statute. If Section 704.01(2), Florida Statutes, is held not to violate Article X, Section 6(a), then there can be no rational basis to restrict the power of the legislature to delegate the authority to take permanently.
Deseret, 349 So.2d at 159.
Justice Sundberg's prophecy has partially come true. In 1991, the term "temporary" was removed from the statute. The easement now exists for "so long as such easement is reasonably necessary for the purposes stated herein." Does there now exist a rational basis for limiting this private taking to an easement instead of a fee?
[3] Art. 1, § 2, Fla. Const. (1968).